# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

GREGORY COUSIN,            )
                           )
    Plaintiff,         )
                           )
v.                         )     Case No. CIV-15-150-D
                           )
CAROLYN COLVIN, Acting     )
Commissioner of Social Security, )
                           )
    Defendant.         )

## REPORT AND RECOMMENDATION

Plaintiff, Gregory Cousin, seeks judicial review of the Social Security Administration's denial of his application for supplemental security income (SSI) benefits. United States District Judge Timothy D. DeGiusti referred this matter for proposed findings and recommendations. *See* 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons set forth below, it is recommended that the Commissioner's decision be affirmed.

### I.    Procedural History

On March 26, 2012, Plaintiff protectively filed an application for SSI with the Social Security Administration (SSA) alleging a disability onset date of March 1, 2010, a date Plaintiff later amended to March 21, 2012. *See* Administrative Record (AR) [Doc. No. 10], 48, 49, 207. The SSA denied Plaintiff's application both initially and on reconsideration. AR 104, 108. Following a hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision and the Appeals Council declined Plaintiff's request for review. AR 1-3, 34. This appeal followed.

### II.    The ALJ's Decision

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005) (explaining five-

step sequential evaluation process); 20 C.F.R. § 416.920. The ALJ first determined Plaintiff had not engaged in substantial gainful activity since the alleged onset date. AR 24. At step two, the ALJ found Plaintiff to have the following severe impairments: diabetes mellitus, obesity, anxiety, and depression, but concluded Plaintiff's diabetic retinopathy is not a medically-determinable impairment within the meaning of SSA regulations. *Id.* At step three, the ALJ concluded Plaintiff's impairments neither meet nor medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1. AR 25. The ALJ next assessed Plaintiff's residual functional capacity (RFC), finding Plaintiff able "to perform the full range of light work as defined in 20 C.F.R. § 416.967(b) except: simple tasks and instructions only; no more than occasional interaction with coworkers and supervisors; and no public contact." AR 27. At step four, the ALJ determined Plaintiff is unable to perform any of his past relevant work as a computer worker, newspaper supervisor, or warehouse worker. AR 33. Relying on the testimony of a vocational expert (VE) at step five, the ALJ concluded there are jobs existing in significant numbers in the national economy that Plaintiff can perform including the representative jobs of polisher (sedentary), mail clerk (light), and parking lot attendant (light). AR 33-34. The ALJ thus found Plaintiff is not disabled for purposes of the Social Security Act. AR 34.

### III. Plaintiff's Claims

Plaintiff raises the followings claims of error: (1) the ALJ's RFC assessment is not supported by substantial evidence because it does not express Plaintiff's mental impairments in terms of proper work-related functions; (2) the ALJ failed to analyze properly the record regarding Plaintiff's vision impairment; and (3) the ALJ did not consider the correct listing for Plaintiff's reduced vision and visual field. *See* Plaintiff's Brief [Doc. No. 12] at 2, 7, 14.

## IV. Standard of Review

Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *See Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (quotation omitted). A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it. *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004). The court "meticulously examine[s] the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (citations omitted). While the court does consider whether the ALJ followed applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quotations and citations omitted).

## V. Analysis

### A. The ALJ's RFC Properly Reflects the Degree of Limitation for Plaintiff's Mental Impairments and Is Supported by Substantial Evidence

Plaintiff first argues the ALJ's RFC determination is flawed because it does not comply with Social Security Ruling (SSR) 96-8p, which requires an ALJ to express a claimant's mental limitations in terms of work-related functions. *See* Plaintiff's Brief at pp. 2-3 (*citing* SSR 96-8p, 1996 WL 374184 at *4 (July 2, 1996) and *Jaramillo v. Colvin*, 576 F. App'x 870, 874 (10th Cir. 2014) (unpublished)). Plaintiff also claims the ALJ's reliance on jobs identified by the VE is not supported by substantial evidence because the hypotheticals the ALJ posed to the VE did not

3

include all of Plaintiff's mental impairments. *See id.* at pp. 3-4. Plaintiff cites the ALJ's findings at step three of the sequential evaluation process, i.e., that Plaintiff has moderate difficulties with regard to social functioning and concentration, persistence, or pace, s*ee id.* at p. 5 (*citing* AR 26), in support of his claim that the following hypothetical does not reflect his mental limitations:

> [A]ssume the claimant [would] be limited to the full range of the light work, except that he'd be limited to simple task[s] and instructions only, no more than occasional interaction with coworkers and supervisors, and would be precluded from public contact.

*See* AR 65.

While the ALJ did not complete a psychiatric review technique form (PRTF) in evaluating Plaintiff's mental impairments at step three, *see Carpenter v. Astrue*, 537 F.3d 1264, 1268 (noting an ALJ is no longer required to prepare a PRTF when evaluating alleged mental impairment, but must document application of the technique in the decision), he did make express findings regarding Plaintiff's mental limitations as required by 20 C.F.R. §416.920a,[1] and duly followed the dictates of SSR 96-8p in assessing Plaintiff's "limitations and restrictions from a mental impairment(s) in categories identified in the 'paragraph B' and 'paragraph C' criteria of the adult mental disorders listings." SSR 96-8p, 1996 WL 374184 at *4 (July 2, 1996). In so doing, the ALJ concluded at step three that Plaintiff has mild restriction in activities of daily living; moderate difficulties in social functioning; moderate difficulties with regard to concentration, persistence, and pace; but has not experienced any episodes of decomposition. AR 25-26.

---

[1] The "special technique" described in 20 C.F.R. § 416.920a requires the ALJ to evaluate the claimant's symptoms, signs, and laboratory findings, *id.*, § 416.920a(b), and rate the degree of claimant's functional limitation in four broad areas (activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decomposition), *id.*, § 416.920a(c), in order to determine the severity of the claimant's mental impairments, *id.* § 416.920a(d).

The "limitations identified in the 'paragraph B' and 'paragraph C' criteria *are not an RFC assessment*" however, "but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process." SSR 96-8p, 1996 WL 374184 at *4 (July 2, 1996) (emphasis added). It follows that Plaintiff's reliance on the ALJ's step-three findings and conclusions in disputing the ALJ's RFC is improper. "The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental orders listings in 12.00 of the Listing of Impairments, and summarized on the PRTF." *Id*. Thus, evaluation of mental RFC for use at step four or five is more properly considered not in terms of the paragraphs B and C criteria of step three, but in the context of the mental activities listed in a Mental Residual Functional Capacity Assessment (MRFCA) or Mental Work Restrictions/Recommendations (MWRR) form.[2] *See Wells v. Colvin,* 727 F.3d 1061, 1069 (10th Cir. 2013) (recognizing that PRTF provides merely a summary of the functions that are itemized in more detail in the mental RFC assessment); *Pryce-Dawes v. Colvin*, 587 F. App's 479, 481 (unpublished) (recognizing the MRFCA is a more detailed evaluation of the PRTF categories and is used to assess RFC at steps four and five).

Plaintiff's treating physician, Dr. Strickland, completed an MWRR on Plaintiff's behalf. In it, Dr. Strickland assessed to be "limited but satisfactory" Plaintiff's abilities to understand, remember, and carry out very short and simple instructions; ask simple questions or request assistance; be aware of normal hazards and take appropriate precautions; adhere to basic standards of neatness and cleanliness; travel in unfamiliar place; and use public transportation.

---

[2] The MRFCA and the MWRR contain, in different order and under different headings, the same detailed questions regarding a patient's ability to perform at least twenty work-related mental activities. *Compare* Plaintiff's MWRR, AR 624-25, *with* SSA-4734-F4-SUP (02-2008) Mental Residual Functional Capacity Assessment, Social Security Official Forms, available on Westlaw.

AR 624-25. Dr. Strickland characterized as "seriously limited but not precluded" Plaintiff's abilities to maintain regular attendance and be punctual within customary, usually strict tolerances; sustain an ordinary routine without special supervision; work in coordination with proximity to others without being unduly distracted; make simple work-related decisions; accept instructions and respond appropriately to criticism from supervisors; get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; respond appropriately to changes in a routine work setting; deal with normal work stress; set realistic goals or make plans independently of others; and maintain socially appropriate behavior. *Id.* Dr. Strickland further assessed Plaintiff as being "unable to meet competitive standards" in the following areas: remember work-like procedures; maintain attention for two-hour segments; complete a normal workday and workweek without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; understand and remember detailed instructions; carry out detailed instructions; deal with stress of semiskilled and skilled work; and interact appropriately with the general public. *Id.* And as a final matter, Dr. Strickland anticipated Plaintiff's impairments or treatment would cause him to be absent from work "[m]ore than four days per month." AR 626. The ALJ surmised this "extremely limiting assessment . . . would likely preclude all competitive work." AR 31.

In formulating his RFC, the ALJ concluded "careful review of the record fails to document sufficient valid, objective medical evidence to substantiate the degree of functional limitations" Plaintiff alleged. AR 30. The ALJ provided several reasons – none of which Plaintiff challenges on appeal – for assigning significantly less weight than he otherwise would

have to the treating source opinion of Dr. Strickland.³ AR 32. First, the ALJ noted Plaintiff sought no mental health treatment of any kind until July 2013, *after* his application for SSI was denied both initially and upon reconsideration, and *after* he had submitted a written request for a hearing. AR 22, 30, 635; *see Bean v. Chater,* 77 F.3d 1210, 1213 (holding ALJ, in gauging credibility, properly considered claimant's failure to seek treatment); *Huston v. Bowen*, 838 F.2d 1125, 1132 (holding an ALJ may consider "the extensiveness of the attempts (medical or nonmedical) to obtain relief" when in assessing claimant's credibility). Second, no record evidence exists to show Dr. Strickland, despite opining Plaintiff's limitations began ten years earlier, had had the opportunity to review any of Plaintiff's prior medical records. AR 32, 626.

Third, the ALJ reasoned the serious limitations Dr. Strickland indicated in the MWRR "do not appear to have a foundation in the treatment record" because they are more extreme than Dr. Strickland's own contemporaneous descriptions of Plaintiff during each of their four office visits. AR 32. For example, on August 12, 2013, approximately one month after establishing care and first prescribing anti-depressant medication for Plaintiff, Dr. Strickland observed Plaintiff's general appearance and manner to be clean, appropriate, and cooperative; his mood and affect depressed; his speech coherent and its rate and volume normal; his thought processes logical, insight good, and judgment intact. AR 660. In addition, Dr. Strickland noted the absence of hallucinations, delusions, and suicidal or homicidal ideation. *Id.* The next month, on September 9, 2013, Dr. Strickland made the same findings but noted Plaintiff's mood had improved to "good" and his affect to "bright." AR 662. On November 5, 2013, the ALJ granted

---

³ Despite listing in one location of his Brief in Chief "The ALJ Did Not Properly Determine Credibility" as his fourth contention of error on appeal, Plaintiff failed to brief the issue and has therefore waived it. *See* Plaintiff's Brief at p. 2; *Chambers v. Barnhart*, 389 F.3d 1139, 1142 ("The scope of our review . . . is limited to the issues the claimant . . . adequately presents on appeal." (internal quotation marks omitted)).

7

Plaintiff's request to postpone the hearing until the March 2014 docket. AR 71-74. It was at his appointment with Dr. Strickland one month later, on December 2, 2013, that Plaintiff first described worsening symptoms to include suicidal ideation, auditory and visual hallucinations, and paranoid delusions; Dr. Strickland revised Plaintiff's medication regimen in response. AR 664-67.

The ALJ further found Plaintiff's allegations and Dr. Strickland's conclusions to be weakened by Plaintiff's own testimony. AR 32. During his intake evaluation at Dr. Strickland's office July 1, 2013, Plaintiff informed the clinician he "has not worked 'in years' other than doing lawn work" and that "[h]e has trouble getting a job due to his 'sex offender' status." AR 30, 635, 649. Plaintiff described himself as "an easy going guy" who has difficulty paying his bills, cuts grass "as needed for money," and is "good at landscaping." AR 30, 645, 648. He also reported living alone and engaging in leisure activities such as playing cards and watching television. AR 30, 51, 55, 645. On January 2, 2014 – one month after informing Dr. Strickland he was experiencing hallucinations and delusions – Plaintiff informed a clinician he was "actively seeking employment," with the goal of achieving "stable gainful employment" and "denie[d] problems with his judgment and does not hear voices or see things . . . ." AR 654. The ALJ further noted the lack of record evidence to show Plaintiff ever reported problems with anxiety, depression, or psychosis to Dr. Mithlo or any other treating clinician. AR 31. The ALJ reasoned the absence of record evidence in this regard constituted "other substantial evidence [that] contrasts significantly with [Dr. Strickland's] opinion." *Id.*

As a final matter, while the record evidence shows Plaintiff earned less than $16,500 total in the fifteen-year period preceding his application, AR 250, it also shows Plaintiff earned more in 2012 – $9,353.10 – than he did in the preceding twelve years combined, this despite Plaintiff's

declaration in his disability report that he stopped working in June 2004 due to his conditions. AR 30, 250, 274. Based on this earnings history, the ALJ concluded Plaintiff had little motivation to work. AR 30, 250.

The ALJ's credibility determinations, being thus "grounded in the evidence and articulated in the determination or decision," provide a legally sufficient basis on which to disregard Plaintiff's testimony and the "extremely limiting" aspects of Dr. Strickland's assessment. SSR 96-7p, 1996 WL 374186, at *4 (July 2, 1996); *see Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1169 (10th Cir. 2012). The ALJ also assigned little weight to the state-agency medical consultants who opined Plaintiff had no severe impairments at all, reasoning the evidence of record, when considered as a whole, supports the finding of some limitations due to Plaintiff's physical and mental impairments. AR 32. Thus, the ALJ concluded at step four that Plaintiff "does experience some limitations but only to the extent accounted for the in [RFC]," namely, "simple tasks and instructions only; no more than occasional interaction with coworkers and supervisors; and no public contact." AR 27, 33; *see Martin v. Apfel*, 162 F.3d 1173 (10th Cir. 1998) (table), 1998 WL 769877 at *1 ("to the extent that the various [PRTF] and the [MRFCA] forms in the record conflict as to their determination of the limitations plaintiff's mental impairments impose on her ability to function, it was within the ALJ's province to determine the appropriate weight to be given this contradictory evidence."). The ALJ expressed those identical limitations in the hypothetical he posed to the VE, when inquiring for step-five purposes about the availability of other work. AR 65-66.

Plaintiff, however, argues "[t]here is no clear indication in using the word 'simple'" in the hypothetical to the VE that Plaintiff "has a 'moderate' difficulty in his ability to understand, remember, and carry out detailed instructions or deal with social phobias or was 'moderately

9

limited' in social functioning, concentration, persistence and pace." *See* Plaintiff's Brief at p. 5; *see also* Reply Brief at pp. 8-9 ("There is no sign that the ALJ has adequately or more perfectly, 'logically connected' his RFC to the moderate limitation that he found."). Plaintiff continues that "[t]his lack of connection violates Social Security Ruling 96-8p, which requires a claimant's impairment to be conveyed in a hypothetical to a VE with sufficient precision," and "[t]herefore, the ALJ's reliance on all of the jobs provided by the VE in response to the hypothetical is not supported by substantial evidence." *See* Plaintiff's Brief at p. 6, *citing Jaramillo*, 576 F. App'x at 876.

Plaintiff relies heavily on *Jaramillo*, an unpublished decision, in support of this contention of error on appeal. The ALJ in that case expressly placed great weight on the opinion a state-agency medical consultant, *id.* at 873, who found the claimant "moderately limited in his ability to (1) carry out instructions, (2) attend and concentrate, and (3) work without supervision." *Id.* at 872. Despite this heavy reliance, the ALJ's formulation of the RFC limited the claimant only "to simple, routine, repetitive, and unskilled tasks." *Id.* On appeal, the claimant argued "the ALJ violated the requirement of [SSR] 96-08p that 'nonexertional capacity [which includes mental limitations] must be expressed in terms of work-related functions' or '[w]ork-related mental activities.'" *Id.* at 874, *citing* SSR 96-8p, 1996 WL 374184, at *6 (July 2, 1996).

Addressing this argument, the Tenth Circuit first observed the basic mental demands of unskilled work "include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." *Id*. at 875 (*citing* SSR 85-15, 1985 WL 56857 at *4 (1985)). The court stated "*[t]hese abilities are examples of work-*

*related mental functions.*" *Id.* (*citing* SSR 85-15, 1985 WL 56857 at *6 (1985)) (emphasis added). Because the distinction between skill level and "the basic mental abilities of unskilled work described in SSR 85-15" does not apply where mental limitations are mild, the Tenth Circuit reasoned "a limitation to unskilled work or . . . 'unskilled tasks,' could be used as shorthand for the specific mental abilities described in SSR 15-15 . . . ." *Id.* But because the ALJ expressly gave great weight to the medical consultant's assessment that the claimant's symptoms were moderate, not mild, the Tenth Circuit concluded "[t]he limitation to simple, routine, repetitive, and unskilled tasks the ALJ included in his hypothetical to the VE did not clearly relate the moderate impairments [the doctor] found and, therefore, "the ALJ's reliance on the jobs the VE identified in response to the hypothetical was not supported by substantial evidence." *Id.* at 876.

Here, unlike in *Jaramillo*, the ALJ discounted much of the treating physician's assessment of Plaintiff's mental limitations. The ALJ's RFC limiting Plaintiff to "simple tasks and instructions only; no more than occasional interaction with coworkers and supervisors; and no public contact" accurately reflects, in work-related functions, the nature and degree of mental limitations the ALJ found Plaintiff to have. AR 27. The hypotheticals the ALJ posed to the VE track the same limitations. AR 65. It follows that the ALJ's reliance on the unskilled jobs the VE identified in response to the hypothetical was supported by substantial evidence. *See Beasley v. Colvin*, 520 F. App'x 748, 754 (10th Cir. 2013) (unpublished) ("The ALJ was under no obligation to include limitations in social functioning in [claimant's] RFC based solely on his finding that she had 'moderate difficulties' in social functioning as part of the distinct step-three analysis."). For these reasons, Plaintiff's first claim of error lacks merit and should be denied.

### B. Substantial Evidence Supports the ALJ's Determination Plaintiff's Alleged Diabetic Retinopathy Is Not a Medically-Determinable Impairment and It Was Not Error for the ALJ to Fail to Include Visual Restrictions in the RFC

At step two, the ALJ found "the claimant's Diabetic Retinopathy is not a 'medically determinable impairment,' as defined by the Regulations" because it is "not supported by signs, symptoms, or laboratory findings" as defined in 20 C.F.R. § 416.982 and because "[a] statement of symptoms alone is not sufficient to establish that there is a physical impairment." AR 24. At step four, the ALJ did not include visual limitations in the RFC. AR 27. Plaintiff argues both that objective evidence exists sufficient to establish his diabetic retinopathy at step two and that the ALJ erred by not including a vision-related restriction in the RFC when questioning the VE at step four. *See* Plaintiff's Brief at pp. 10, 14.

The record evidence includes a report by ophthalmologist Vidya Rege, M.D., who examined Plaintiff on August 12, 2009, in connection with Plaintiff's prior application for benefits (which is not at issue in this case). AR 519. At that time, Plaintiff reported he had been experiencing blurred vision for the past six years (since 2003) but that this was the first eye examination he had ever had in his life. *Id.* In her letter to the state agency summarizing her assessment, Dr. Rege reported Plaintiff's eyes aligned well; slit lamp exam results were within normal limits; fundus exam showed clear media, normal disc, and no diabetic retinopathy; and Plaintiff exhibited full range of external ocular movement and normal intraocular pressure. Dr. Rege found Plaintiff's visual acuity of 20/60 with glasses to be "[v]ery inconsistent with clinical findings" and noted Plaintiff refused to read during the examination. *Id.* She diagnosed Plaintiff with bilateral blurred vision and presbyopia and suggested he keep good control over his blood sugar and schedule annual eye examinations. *Id.* Eight months later, when Plaintiff was

admitted to Comanche County Memorial Hospital for elevated blood sugar on April 7, 2010, he denied experiencing any visual changes. AR 524.

In his March 26, 2012 application for SSI, which is the subject of the present action, Plaintiff declared he has been blind since March 1, 2010. AR 207. When Robert Balogh, M.D., a state-agency physician, examined Plaintiff on May 10, 2012, Plaintiff stated he had developed trouble with his vision over the past one-and-a-half to two years (since 2010), experiencing blurry and faded vision and finding it difficult to recognize things. AR 560. Using a Snellen chart[4] to test Plaintiff's visual acuity, Dr. Balogh determined Plaintiff's best corrected vision was 20/100 in each eye and recommended Plaintiff see an ophthalmologist for a full evaluation including a dilated retinal exam. AR 561.

Plaintiff met with Dr. Rege for the second time on August 8, 2012, at which time Plaintiff informed Dr. Rege he had been experiencing blurred vision for the past four years (since 2008). AR at 568. Dr. Rege made the following findings during this visit: Plaintiff's eyes aligned well; slit lamp examination results were within normal limits; examination of the fundus revealed clear media and normal disc; Plaintiff exhibited normal intraocular pressure, the full range of extraocular movement, and no difficulty moving around the office. AR 568-570. Dr. Rege, who found Plaintiff's reported field vision to be inconsistent with the clinical findings, recommended he return for a dilated examination. *Id.*

After the subsequent office visit on November 15, 2012, which included dilation, Dr. Rege evaluated Plaintiff's vision as follows: he did not have any problems moving around the office; external and funduscopic examinations were normal; best vision obtained upon refraction

---

[4] A Snellen chart is an eye chart comprising rows of black letters of decreasing size. A test subject stands twenty feet from the chart, covers one eye at a time, and reads aloud the smallest row of letters he or she is able to discern on the chart.

13

for both near and distance vision was 20/40 in the right eye and 20/50 in the left; and his reported field of vision was unexplained and abnormal. AR 573. Dr. Rege diagnosed Plaintiff with bilateral presbyopia and recommended he begin wearing bifocals and receiving annual eye exams. *Id.* In her letter to the state agency, Dr. Rege summarized Plaintiff's ophthalmic history as follows: "He never wore glasses before. He was noticing problems with his vision for past 4 years but never went for checkup. He never had eye examination except thru SSDD." AR 576. Dr. Rege also reported Plaintiff's dilated fundus examination revealed no hemorrhages or occlusion in his blood vessels and that his peripheral retina including macula showed no signs of diabetic retinopathy or macular oedema. *Id.* Based on Dr. Rege's report, Janet G. Rodgers, M.D., a state-agency physician, confirmed not only that "[t]here is no evidence of diabetic retinopathy" and thus "the claimant does not meet a listing," but also that there is, in fact, "no visual impairment." AR 594.

In terms of Plaintiff's own statements and testimony regarding his vision, he reported he frequently plays the card game solitaire, AR 55-56; watches television "a lot," AR 51, 55-56; drives an automobile occasionally, AR 46; and performs odd jobs for money, AR 49-50, 645, without indicating visual difficulty in engaging in these activities. Plaintiff acknowledged he had not sought evaluation or worn glasses for his allegedly disabling blurred vision. AR 519, 568, 576. As discussed, it is appropriate for the ALJ, in gauging credibility, to consider Plaintiff's failure to seek treatment or obtain relief. *See Bean,* 77 F.3d at 1213; *Huston*, 838 F.2d at 1132.

Between Dr. Rege's medical findings, Plaintiff's conflicting testimony, and his failure to seek treatment or wear glasses, substantial evidence – "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Doyal*, 331 F.3d at 760 – exists to support both the ALJ's step-two conclusion that Plaintiff does not have a medically-determinable

visual impairment and his step-four determination Plaintiff's RFC does not include a vision limitation. Given that substantial evidence supports the ALJ's determinations at steps two and four regarding Plaintiff's eyesight, it is not necessary to consider Plaintiff's additional argument that his alleged visual limitations render him unfit for the representative jobs of polisher, mail clerk, and parking lot attendant the VE discussed at step five. *See* Plaintiff's Brief at pp. 11-14.

**C.   It Was Not Error for the ALJ to Fail to Consider Listing 2.00 for Plaintiff's Alleged Visual Impairment at Step Three**

For his final charge of error, Plaintiff argues the ALJ should have looked at listing 2.00, "Special Senses and Speech," in evaluating his allegedly reduced vision and visual field at step three. *See* Plaintiff's Brief at pp. 14-15. The steps in the evaluation process are sequential, however. 20 C.F.R. § 416.920. Only medical evidence consisting of signs, symptoms, and laboratory findings from a medically acceptable source such as a licensed physician may establish that a claimant has a medically-determinable impairment at step two. *Id.* at §§ 406.908, 406.913(a), 416.928; *see also Frantz v. Astrue*, 509 F.3d 1299, 1301 (10th Cir. 2007). Indeed, "[n]o symptom or combination of symptoms can be the basis for a finding of disability, no matter how genuine the individual's complaints may appear to be, unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment." SSR 96-4p, 1996 WL 374187 at *1 (July 2, 1996). Here, Dr. Rege found, and Dr. Rodgers confirmed, no clinical evidence of diabetic retinopathy exists. AR 29, 573, 594. Thus, the ALJ concluded at step two that Plaintiff's alleged diabetic retinopathy and visual limitations were not medically-determinable impairments, i.e., they did not "result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 416.907; AR 29. As such, the ALJ was not obligated to consider whether Plaintiff's alleged vision problems met or

equaled a listing at step three. 20 C.F.R. § 920(a)(4)(ii). The ALJ applied the correct legal standard and substantial evidence supports his findings.

## **RECOMMENDATION**

For the foregoing reasons, it is recommended that the Commissioner's decision be affirmed.

## **NOTICE OF RIGHT TO OBJECT**

The parties are advised of their right to object to this Report and Recommendation in accordance with 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72. Any objection must be filed with the Clerk of the District Court by January 5, 2016. Failure to timely object to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## **STATUS OF REFERRAL**

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED this 22nd day of December, 2015.

_____
BERNARD M. JONES
UNITED STATES MAGISTRATE JUDGE